IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| CORBINA F. ROZZEL, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-1054-CV-W-ODS ) |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING
## COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff's appeal of the Commissioner of Social Security's final decision denying her application for disability benefits under Title II. The Commissioner's decision is affirmed.

"[R]eview of the Secretary's decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." Mitchell v. Shalala, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. Forsythe v. Sullivan, 926 F.2d 774, 775 (8th Cir. 1991) (citing Hutsell v. Sullivan, 892 F.2d 747, 749 (8th Cir. 1989)). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. Gragg v. Astrue, 615 F.3d 932, 938 (8th Cir. 2010).

The ALJ issued her ruling on June 7, 2012. Therefore, to be entitled to benefits Plaintiff must have been disabled on or before that date.

## I.

At the second step of the five-step sequential analysis, the ALJ found Plaintiff suffered from the following severe impairments: degenerative disc disease in the cervical spine, cerebral small vessel disease, migraine headaches, depression, and anxiety. Plaintiff contends the ALJ erred in failing to find two additional severe impairments: fibromyalgia and mini strokes.

An impairment is severe and thus satisfies Step Two if it imposes more than a minimal effect on the claimant's ability to work. However, the impairment must be established to exist, and doing so requires the claimant to present objective medical evidence demonstrating that a "medically determinable impairment is present." 20 C.F.R. § 404.1529(b); see also Social Security Ruling 96-3p, 96-4p. The ALJ held that "[s]ince there are no diagnoses of fibromyalgia and mini strokes in the record from an acceptable medical source, they are not medically determinable impairments." R. at 17.

With respect to fibromyalgia, Plaintiff first relies on a statement from her primary care physician, Dr. William Fish. On June 29, 2009, he wrote that Plaintiff "has had previous fibromyalgia diagnosis." R. at 272. However, Dr. Fish did not actually assess Plaintiff and render a diagnosis; he reiterated her report that she has been diagnosed. This does not constitute an actual diagnosis by Dr. Fish, and there is no prior diagnosis of fibromyalgia in the Record. Plaintiff also relies on medical diagnoses of fibromyalgia rendered *after* June 7, 2012. The ALJ understandably did not address these documents because they were created after she reached her decision. More importantly, they do not relate to Plaintiff's condition within the relevant time period, which ended with the ALJ's decision. Plaintiff contests this point, arguing "the Appeals Council admitted this evidence to the record and considered it relevant." Plaintiff's Reply Brief at 2. Newly submitted evidence becomes part of the Record, but it is to be evaluated only to the extent that it relates to the period addressed by the ALJ's decision. E.g., Cunningham v. Apfel, 222 F.3d 496, 500 (8th Cir. 2000). In this case, the Appeals Council stated that it considered the additional records but that "[t]his new information is about a later time. Therefore, it does not affect the decision about whether [Plaintiff was] disabled beginning on or before June 7, 2012." R. at 2. Thus, it is not true that the

2

Appeals Council found it relevant. For the same reasons espoused by the Appeals Council, the Court also concludes that the additional information is not relevant and there is substantial evidence in the Record as a whole to support the ALJ's determination that there was no medical determination Plaintiff suffered from fibromyalgia on or before the date of her decision.

With respect to the issue of "mini strokes," Plaintiff does not contend there was objective medical evidence demonstrating that this medically determinable impairment existed. Instead, she contends the ALJ should have further developed the Record by obtaining a consultative examination. The Court disagrees. Plaintiff was receiving treatment for her vascular issues and was diagnosed as suffering from cerebral small vessel disease – a condition the ALJ found to qualify as a severe impairment. Plaintiff's own doctors did not diagnose Plaintiff as suffering from mini strokes, and the ALJ was not obligated to arrange for a consultative examination to evaluate whether Plaintiff suffered from a condition that her own doctor would have addressed if it existed. E.g., Steed v. Astrue, 524 F.3d 872, 876 (8th Cir. 2008) (citing Goff v. Barnhart, 421 F.3d 785, 791 (8th Cir. 2005)). The medical records submitted were sufficient to allow the ALJ to conclude that they did not support Plaintiff's claim that she suffered from mini strokes, so there was sufficient evidence in the Record to support her conclusion that this Plaintiff did not suffer from this severe impairment.

II.

The ALJ found Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she needed to avoid concentrated exposure to vibration and she was further limited to semi-skilled work requiring a specific vocational preparation ("SVP") of four or less. R. at 18.[1] Plaintiff identifies additional limitations she believes should have been included.

---

[1] "The SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance." Hulsey v. Astrue, 622 F.3d 917, 923 (8th Cir. 2010).

First, she contends the ALJ erred in not including limitations on her ability to function socially. In the context of determining whether Plaintiff's mental impairments met or equaled a listed impairment, the ALJ found Plaintiff had mild difficulties in the area of social functioning. R. at 18-19. Plaintiff faults the ALJ for not including these difficulties in her RFC, but the ALJ specifically stated that this discussion was not intended to be an assessment of Plaintiff's RFC and that the RFC assessment "requires a more detailed assessment" than the broad categories contained in the listing. R. at 18. This explains why it was not error for the ALJ to automatically incorporate limitations on Plaintiff's ability to function socially (as discussed by the consulting psychologist, Dr. Stanley Hutson) in the RFC. Later, when specifically addressing Plaintiff's RFC, the ALJ marshalled the evidence relating to Plaintiff's mental condition and discussed at length the treatment records from one of Plaintiff's treating physicians, Dr. Michelle Birdsell. R. at 23-24. Dr. Birdsell did not suggest Plaintiff could not interact socially with the general public, supervisors, or co-workers, so the ALJ did not err in failing to incorporate Dr. Hutson's opinion in the RFC.

In this discussion, the ALJ also addressed the opinions of Dr. C. William Breckenridge, a consulting psychologist. The ALJ found Plaintiff had suffered from "limited concentration, persistence and pace caused by depression and anxiety" and for that reason included the SVP limitation of four or less. R. at 29. Thus, the ALJ properly accounted for these limitations.

Next, Plaintiff contends the ALJ erred in not according more weight to Dr. Susan Lieberman's Medical Source Statement ("MSS") because "it was not supported by her own treatment notes or any other medical records in evidence and gives no functional mental limitations. Most importantly, it is based on the claimant's self-reporting, and the claimant is not credible in alleging complete disability, as explained below." R. at 27. Plaintiff contends the MSS was based on an objective diagnosis and not Plaintiff's self-reports of depression. However, what has been described as a Medical Source Statement is really just a three-sentence letter that does not contain any limitations; it merely says Plaintiff "continues to be very depressed" and "has been unable to work," but a psychologist is not qualified to offer a vocational opinion. Plaintiff cites this letter as demonstrating the objective basis for Dr. Lieberman's diagnosis, but none is present.

4

Moreover, Plaintiff has not addressed the inconsistencies between this letter and Dr. Lieberman's treatment notes. A physician's opinion may be disregarded if it is unsupported by clinical or other data or is contrary to the weight of the remaining evidence in the record – including that doctor's contemporaneous treatment notes. E.g., Anderson v. Astrue, 696 F.3d 790, 793-94 (8th Cir. 2012); Pena v. Chater, 76 F.3d 906, 908 (8th Cir. 1996). This inconsistency provides substantial evidence in support of the ALJ's decision with respect to Dr. Lieberman's opinion.

Plaintiff also faults the ALJ for not accepting the opinion of Dr. Dana Winegarner, who indicated Plaintiff's headaches would not prevent her from working although she would be guaranteed to miss one or two days of work every month . . . and her productivity would probably be [decreased] on all days that she was there due ot he presence of a chronic, low level background headache." R. at 465. The ALJ discounted this opinion because there was no medical support for it and Plaintiff "had no emergency room visits during the period being adjudicated, which would normally be the case for someone with debilitating migraine headaches. Most importantly, Dr. Winegarner's opinions are based on the claimant's self-reporting, and the claimant is not credible, as explained below." R. at 27. Plaintiff argues Dr. Winegarner's opinion (offered in August 2010) was supported by his review of MRIs of Plaintiff's spine from October 2009, R. at 295, and June 2012, R. at 512,[2] as well as his treatment notes. However, Plaintiff does not point to anything in Dr. Winegarner's notes that substantiates Plaintiff's debilitating migraines. All those notes contain is Plaintiff's reports of headaches – which leads directly to the criticism the ALJ found to be most important.

Finally, Plaintiff contends there was insufficient medical evidence to support the RFC determination. The ALJ relied in part on the opinion of Dr. Q. Michael Ditmore. Plaintiff contends the ALJ could not rely on this opinion because she rejected his conclusion that Plaintiff could perform medium-level work. However, the Court is aware of no setting in which a factfinder is obligated to believe all or nothing of what a witness says. Moreover, the ALJ relied on evidence from a combination of sources, including

---

[2]Of course, it was impossible for Dr. Winegarner's August 2010 letter to be predicated on the June 2012 MRI.

5

not only Dr. Ditmore but also Dr. Birdsell, Dr. Fish, and Dr. Rebecca Burfeind – all of whom treated Plaintiff for various conditions. The Court discerns no error.

### III.

The ALJ determined Plaintiff could return to her past work as a shipping order clerk. Plaintiff attacks this finding, contending the ALJ did not make any findings about (and the vocational expert ("VE") offered no testimony about) the specific physical and mental demands of the job. To the contrary: the ALJ discussed Plaintiff's own testimony about the demands of her job. R. at 29. Based on the ALJ's findings, the VE testified that Plaintiff's prior job was properly classified as a shipping clerk. R. at 631, 633-35. The Record thus supports the ALJ's decision at Step 4.[3]

### IV.

The Commissioner's final decision is affirmed.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: October 22, 2014　　　　　　　　UNITED STATES DISTRICT COURT

---

[3]The Court does not accept the Commissioner's invitation to apply a harmless error analysis because the ALJ's written order does not contain any findings about Plaintiff's ability to perform other jobs in the national economy. While it is quite possible the ALJ accepted the VE's testimony on this point, the absence of a written finding precludes consideration of the issue.